STATE OF FLORIDA, *ex el.* CARY D. LANDIS, as Attorney-General, *Relators,* v. GEORGE J. ROSENTHAL, *Respondent.*

148 So. 769.
Opinion filed April 8, 1933
Re-hearing denied June 21, 1933

*Cary D. Landis,* Attorney General, *Lester & Albury* and *H. H. Taylor,* for Relator;

*I. J. A. Renno* and *Waller & Papper,* for Respondent.

WHITFIELD, J.—The Attorney General of the State brought *quo warranto* proceedings to test the validity of the franchise claimed herein by the respondent.

A franchise is a special privilege conferred upon one or more individuals or a corporation by governmental authority to do something that cannot be done of common right. Leonard *et al.* v. Baylan Street Wharf Co., 59 Fla., 547, 52 So. 718, 31 L. R. A. (N. S.) 636; 26 C. J. 1008.

The right to establish and maintain a toll bridge is a franchise. A grant from a sovereign power is essential to the creation of a franchise. Subject to organic limitations, the Legislature may grant franchises. 26 C. J. 1013, 1025. If the legislative power to grant franchises may be delegated when the franchise directly affects the rights and prerog-

atives of the State, such delegation of authority should be accompanied by appropriate limitations within which the delegated authority may be exercised, in order to enforce controlling law and to conserve public policy and the general welfare.

The navigable waters within the State and the lands thereunder are held by the State in trust for all the people of the State, subject to the powers of Congress as to navigation. State *ex rel.* Ellis v. Gerbing, 56 Fla. 503, 47 So. 353, 22 L. R. A. (N. S.) 337.

Chapter 11640, Acts of 1925, under a title "to confer power and authority on the Board of County Commissioners of Monroe County, Florida, to grant licenses, privileges and franchises to any persons or corporation, under such conditions and for such a term as the Board of County Commissioners may determine, to construct, operate and maintain toll bridges in Monroe County, Florida, and to connect said toll bridges with the public roads within said county," etc., contains the following:

"Be It Enacted by the Legislature of the State of Florida:

"Section 1. The powers and authority are hereby conferred upon the Board of County Commissioners of Monroe County, Florida, to grant licenses, privileges or franchises to any person, firm or corporation, to construct or operate toll bridges across the waters and streams of Monroe County, Florida, provided, however, before any such bridges are constructed, the permission of the War Department of the United States must first be obtained for the construction and maintenance of said bridges.

"Sec. 2. The Board of County Commissioners shall determine the period of time for which the licenses, privileges and franchises shall exist, provided no such licenses, privileges or franchises shall extend beyond the period of forty years from the date said bridges are placed in operation.

'"Sec. 3. The Board of County Commissioners shall have power to determine the conditions under which said franchises, licenses or privileges are granted, and shall have power to require *security*, from persons receiving said franchises and shall determine the rules and regulations under which said toll bridges shall be operated in the State of Florida."

The franchise granted to the respondent states that:

" 'The County does hereby agree, subject to the approval and granting of permission by the United States War Department for the construction and maintenance of said Toll Bridges, Causeways and/or Fills to grant to the said George J. Rosenthal, his heirs, legal representatives and assigns, and, if approved by the said United States War Department, does hereby grant to the said George J. Rosenthal, his heirs, legal representatives and assigns, the sole and exclusive Franchise, License and Privilege to construct, operate and maintain Toll Bridges, Causeways and/or Fills over and across the waters of Monroe County and State of Florida, from No Name Key, Florida, to Lower Matecumbie, Florida, connecting up the two ends of the State Road 4-A and known as the Oversea Highway as provided in the said plans and routes as approved by the War Department of the United States of America.

" 'Said exclusive Grant, Franchise, License and Privilege shall be construed to mean that no other and/or further Grant, Franchise, License and/or Privilege will be granted to any person, firm or corporation, during the life of this Grant, Franchise, License and Privilege, to build, construct and operate any passenger Ferry, Bridges, Causeways, and/or Fills for the use of the general publis, within a radius of ten miles on either side of the termini of the Bridges, Causeways and/or Fills allowed to be constructed and op-

erated within the purview of this Franchise. Nor will Monroe County itself, build, construct, maintain and/or operate any Bridge, Causeway, Fills and/or Ferries during the life of this Franchise on or over the waters of the State of Florida and connecting the Oversea Highway with the mainland or any part thereof from No Name Key, Florida, to Lower Matecumbie, Florida, or within the radius of ten miles from the Bridges, Causeways and/or Fills or terminii thereof as provided in this Franchise. Provided, however, that Ferries may be operated until such time as the Bridges, Causeways and/or Fills provided for in this instrument shall have been opened to the public."

"And the said county of Monroe hereby permits and allows the said George J. Rosenthal, his heirs, legal representatives and assigns, to construct, build, operate and maintain all public utilities that the said George J. Rosenthal may desire over, under and upon the said Bridges, Causeways and/or Fills, provided the said public utilities, or any of them, shall not interfere with or obstruct the normal flow of traffic over said bridges. And the said George J. Rosenthal, his heirs, executors, administrators or assigns, is hereby granted the right to constuct, operate and maintain gradings, and equipment, dredges and dredging equipment over and under said bridges; to construct necessary piling and docks adjacent to said Bridges, Causeways and/or Fills and to construct all things and do all things that by necessary implication would be absolutely essential, incidental and appertaining to the efficient construction, operation and maintenance of said Bridges, Causeways and/or Fills.

"And the said Franchise is hereby issued on the following terms and conditions, to-wit: The said George J. Rosenthal shall furnish to the County a penal bond, on or before six months from date of this Franchise, in the sum of Five Hundred Thousand Dollars ($500,000) conditioned that the

said George J. Rosenthal shall begin actual physical construction of said Bridges, Causeways and/or Fills within ninety days from the date of furnishing of said Bond and shall complete the said Bridges within thirty-six months from the date of the commencing of building operations, unless the same is rendered impossible of strict performance by an Act of God, changing elements, earthquake or the public enemy. Said Bridges, Causeways and/or Fills to be constructed according to plans and specifications hereafter to be submitted by the said George J. Rosenthal and which are to be approved by the United States War Department.

"Provided further, that the said George J. Rosenthal shall agree to and will operate said Bridges, Causeways and/or Fills as toll bridges for the use and benefit of the people of Monroe County, and other members of the traveling public and to maintain said Bridges, Causeways and/or Fills in an efficient manner accommodating all the usual and common traffic of persons, their vehicles and property that may apply for passage over said Bridges, Causeways and/or Fills. 'This said Franchise shall be for a term of forty (40) years, commencing from the time the Bridges, Causeways and/or Fills are completed and opened for use of the general public.'

"The tolls to be charged and collected by the said George J. Rosenthal, his legal representatives, heirs and/or assigns for passage over said Bridges, Causeways and/or Fills shall not exceed the rates embodied in the schedule appended hereto and made a part hereof as though originally incorporated herein.

"Provided, further, that at the end of forty (40) years from the date of the opening of the Bridges, Causeways and/or Fills for the use of the public, the said Bridges, Causeways and/or Fills shall belong to Monroe County,

Florida, free from all charges and shall be in good condi-
tion and repair, reasonable depreciation due to time and
the elements excepted.

"Provided, however, that in the event the Government
of the United States of America or the State of Florida
shall purchase said Bridges, Causeways and/or Fills during
the life of this Franchise, then, and in that event, Monroe
County, Florida, will have and claim no right, title or in-
terest, reversionary or otherwise, in the said Bridges,
Causeways and/or Fills from and after the date of sale
and transfer by the owner of the Bridges, Causeways
and/or Fills, either to the Government of the United States
of America or to the State of Florida.

"Further, it is hereby mutually agreed by and between
the said County of Monroe, Florida, and George J. Rosen-
thal that all improvements, buildings, appurtenances, means
of transportation and/or communication and which are
not directly necessary or essential for the operation and
maintenance of the Bridges, Causeways and/or Fills, shall
not belong to Monroe County, Florida, at the time of the
expiration of the said Franchise but shall be and remain
the property of the said George J. Rosenthal, his heirs,
legal representatives and assigns.

"Wherever George J. Rosenthal is mentioned in this
Franchise, it shall include his heirs, legal representatives
and assigns, if the context so requires or admits.

"This Franchise, license or privilege is granted upon the
express condition that the grantee herein shall first secure
the approval hereof of the State Road Department, of the
State of Florida, and the agreement of the State Road De-
partment that the granting of this franchise shall in no way
interfere with the present State maintenance of Florida
State Road 4-A."

The authority conferred by the statute is upon "the Board

of County Commissioners of Monroe County, Florida." The franchise is granted by "the County," which does not accord with the authority conferred, and renders the franchise inoperative.

The franchise purports to *grant an exclusive franchise,* and to expressly exclude other franchises and the county from operating any passenger, ferry, bridges, causeways or fills for the use of the general public, within a radius of ten miles on either side of the termini of the bridges, causeways and fills authorized by this franchise, and to construct, operate and maintain all public utilities desired by the grantee upon the bridges, causeways and fills authorized, and to retain same after the forty years' limitation of the franchise.

Even if the Legislature may, without prescribing definite and appropriate limitations and restrictions to enforce the controlling law and to conserve the interests of all the people of the State, confer upon the board of county commissioners of a county the authority stated in the franchise, the title of the Act does not express such a subject and the Act does not indicate such a purpose or so provide.

The statute does not authorize exclusive franchises to be granted. Authority to impose conditions does not enlarge the authority conferred or authorize *exclusive* franchises.

One of the conditions of the franchise granted is that it shall be first approved by the State Road Department, and such approval had been denied. Without such approval the franchise, if otherwise valid, never became effective as a grant.

If the county commissioners illegally prevented the approval of the franchise by the State Road Department, that does not remedy the failure to obtain the required approval as a prerequisite to the validity of the franchise, and the remedy of the grantee, if any, for the acts of the county

commissioners, is against them, the State not being responsible for their conduct.

Even if after granting the franchise, the county commissioners had authority to extend the time for filing the "penal bond" which was made a condition of the grant, the personal bond of the grantee alone, which was filed, is not the character of a "penal bond" contemplated by the grant or the "security" required by the statute under which the franchise grant was made.

A reasonable time for procuring the permission of the United States War Department for the construction and maintenance of the proposed bridge has elapsed, and no such permission is shown and no excuse for delay is shown, even if, by the terms of the franchise, such permission is not a condition precedent to the grant of the franchise.

The broad authority and prerogatives attempted to be granted by "the county" to the respondent are not authorized by the statute and are contrary to public policy and to the rights of the people of the State.

Chapter 15023 and Section 8 of Chapter 15024, Acts of 1931, contemplate valid grants of franchises; and do not, if they could, validate the franchise claimed by the respondent. Chapter 15060, Acts of 1931, violates Section 1, Article IX, of the Constitution of Florida.

We are of the opinion that the motion to quash the writ of *quo warranto* should be denied; and upon considering the cause upon the return of the respondent, a judgment of ouster is entered.

DAVIS, C. J., and CAMPBELL, Circuit Judge, concur.

TERRELL and BROWN, J. J., agree to the conclusion.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—The Extraordinary Session of

the Legislature of 1925 enacted Chapter 11640, which, after stating its title and enacting clause, provides as follows:

"Section 1. The powers and authority are hereby conferred upon the Board of County Commissioners of Monroe County, Florida, to grant licenses, privileges or franchises to any person, firm or corporation, to construct or operate toll bridges across the waters and streams of Monroe County, Florida, provided, however, before any such bridges are constructed, the permission of the War Department of the United States must first be obtained for the construction and maintenance of said bridges.

"Sec. 2. The Board of County Commissioners shall determine the period of time for which the licenses, privileges and franchises shall exist, provided no such licenses, privileges or franchises shall extend beyond the period of forty years from the date said toll bridges are placed in operation.

"Sec. 3. The Board of County Commissioners shall have power to determine the conditions under which said franchises, licenses or privileges are granted, and shall have power to require security, from the persons receiving said franchises and shall determine the rules and regulations under which said toll bridges shall be operated in the State of Florida.

"Sec. 4. The Board of County Commissioners shall have power to prescribe the rate of toll to be charged for the use of said toll bridges by the persons holding the privileges, licenses or franchises for the construction and operation of said toll bridges, provided, however, if at any time jurisdiction over toll bridges is conferred upon the Railroad Commission of the State of Florida, or upon any other service commission which may be created in the State of Florida then the powers shall be vested in the Railroad Commissioners or in such other public service commission

which may be created to exercise jurisdiction over public utilities.

"Sec. 5. This Act shall take effect immediately upon its becoming a law."

The validity of this Act is attacked upon the ground that inasmuch as it was passed at a *Special* Session of the Legislature the constitutionally required notice of its proposed passage could not have occurred, although the Legislative Record shows to the contrary. This Act was passed at the same Extra Session at which Chapter 11363 was passed. The latter Act was held valid by this Court in State ex rel. Blitch v. Blitch, 100 Fla. 809, 130 Sou. 444. The same objections and contentions were presented as to the validity of that Act, which are presented here. The record of the passage of the Act now under consideration conforms to the record of the passage of Chapter 11363, *supra*. On authority of State ex rel. Blitch v. Blitch, *supra,* we hold the Act valid so far as this point is concerned.

Subsequent to the passage of this Act the County Commissioners of Monroe County on the 6th day of August, 1930, granted a franchise to George Rosenthal, his heirs, legal representatives and assigns, to construct, maintain and operate toll bridges, causeways and/or fills over and across the waters of Monroe County, State of Florida, from No-Name Key, Florida, to Lower Matecumbie, connecting up the two ends of State Road No. 4-A and known as the Oversea Highway as provided in plans and routes as approved by the War Department of the United States. The franchise was an exclusive one for the period of forty years from the date of the opening of the bridges, causeways and/or fills for the public use and provided that at the end of that period all such bridges, causeways and/or fills should belong to Monroe County, Florida, free from all

charges and to be then in good condition and repair, reasonable depreciation due to time and elements excepted.

The operation of the franchise was dependent upon the approval and the granting of permission by the United States War Department for such construction and maintenance of the bridges, causeways and/or fills.

It was also provided in said franchise that George Rosenthal, his heirs, successors or assigns, "shall first secure the approval hereto of the State Road Department of the State of Florida and the agreement of the State Road Department that the granting of the said franchise shall in no way interfere with the present State maintenance of Florida State Road No. 4-A."

It was further provided in the franchise as follows:

"And the Franchise is hereby issued on the following terms and conditions, to-wit: The said GEORGE J. ROSENTHAL shall furnish to the COUNTY a penal bond, on or before six months from date of this Franchise, in the sum of Five Hundred Thousand Dollars ($500,000.00), conditioned that the said GEORGE ROSENTHAL shall begin actual physical construction of said Bridges, Causeways and/or Fills within ninety days from the date of the furnishing of said Bond and shall complete said Bridges within thirty-six months from the date of the commencing of building operations, unless the same is rendered impossible of strict performance by an act of God, changing elements, earthquake, or the public enemy. Said Bridges, Causeways and/or Fills to be constructed according to the plans and specifications hereafter to be submitted by the said GEORGE J. ROSENTHAL and which are to be approved by the United States War Department."

In addition to the franchise to construct, operate and maintain the instrumentalities above mentioned, the franchise attempted to invest George Rosenthal, his heirs, legal

representatives and assigns, with certain other rights and privileges not contemplated by the statute, as follows:

"And the said County of Monroe hereby permits and allows the said George J. Rosenthal, his heirs, legal representatives and assigns, to construct, build, operate and maintain all public utilities that the said George J. Rosenthal may desire over, under and upon the said bridges, causeways and/or fills, provided the said public utilities, or any of them, shall not interfere with or obstruct the normal flow of traffic over said bridges."

And in this connection, it was further therein provided:

"Further it is hereby mutually agreed by and between the said COUNTY OF MONROE, FLORIDA, and GEORGE J. ROSENTHAL that all improvements, buildings, appurtenances, means of transportation and/or communication and which are not directly necessary or essential for the operation and maintenance of the Bridges, Causeways and/or Fills, shall not belong to MONROE COUNTY, FLORIDA, at the time of the expiration of the said Franchise, but shall be and remain the property of the said GEORGE J. ROSENTHAL, his heirs, legal representatives and assigns."

These two latter provisions were clearly *ultra vires* and void; but those provisions are not involved here because there is no allegation that George Rosenthal, his heirs, legal representatives or assigns, or either of them, is pretending to exercise any rights supposed to have been granted under these provisions of the contract.

On the 14th day of January, 1931, the Board of County Commissioners in regular session convened adopted the following resolution:

"Whereas, the County of Monroe, State of Florida, acting by and through the Board of County Commissioners of said County, did grant a certain franchise to George J. Rosenthal, of Miami, Florida, bearing date the 6th day of August, A.

D. 1930, to construct, operate and maintain toll bridges, causeways and/or fills over and across the waters of Monroe County and State of Florida from No Name Key, Florida, to Lower Matecumbie, Florida, connecting up the two ends of the State Road 4-A, and

"Whereas, the said George J. Rosenthal finds it necessary to ask for an extension of time in which to furnish the Five Hundred Thousand Dollar bond required in and by the said franchise, and

"Whereas, the said George J. Rosenthal has requested that the said time for furnishing said bond be extended to July 6, A. D. 1931, and

"Whereas, it appears it will be for the best interest of said County that said request for extension be granted; now, therefore,

"Be It Resolved, by the Board of County Commissioners of Monroe County, Florida, in regular session convened, that the franchise described in the preambles of this resolution be amended in one particular, that the time within which the said George J. Rosenthal, grantee in said franchise, shall furnish to the County a penal bond in the sum of Five Hundred Thousand Dollars, provided for in said franchise, is hereby extended to and including the 6th day of July, A. D. 1931, in lieu of the provision now contained in said franchise which required that said bond be furnished within six months from the date of said franchise."

And, on the 2nd day of July, 1931, the Board of County Commissioners of Monroe County, in regular session, adopted a like resolution extending the time for furnishing the bond to the 6th day of January, 1932; and on the 21st day of November, 1931, the Board of County Commissioners in special session adopted another like resolution extending the time in which the bond should be furnished to and including the 6th day of April, 1932; and on the 14th day of

March, 1932, the Board of County Commissioners, in special session, adopted another like resolution extending the time for the furnishing of the bond to and including the 31st day of December, 1932.

It is first contended that this being an attempted exclusive franchise, it was void because the County Commissioners were not authorized to grant an exclusive franchise. The Act provides, that, "The Board of County Commissioners shall have power to determine the conditions under which said franchise, license or privileges are granted."

After the franchise had been granted, the Legislature enacted Chapter 15023, Acts of 1931, which authorized the State Road Department of Florida "to make contracts, leases and/or agreements with any corporation or person who has received, or who may hereafter receive a license, privilege or franchise under Chapter 11640, Acts of 1925, from the Board of County Commissioners of Monroe County, Florida, to construct, maintain and operate toll bridges, causeways and fills across any waters and/or streams, and/or submerged lands within Monroe County, Florida, and the State of Florida and which bridges shall constitute part or parts of State Road No. 4-A commonly known as the Over-seas Highway."

It was further provided therein:

"A right of way over any of the lands belonging to the State of Florida and over any of the waters or submerged lands of the State of Florida is hereby granted for the purpose of constructing and operating toll bridges as provided in this Act to any person or persons or corporation who has received or who may hereafter receive any franchise, license or privilege from Monroe County, Florida, under Chapter 11640, Acts of 1925, to construct and/or operate and maintain any of said toll bridges, causeways or fills across any of the waters, streams or submerged lands of the State of

Florida, and which bridges, causeways or fills shall constitute part, or parts of the State Road No. 4-A, commonly known as the 'Over-seas Highway,' provided said right of way shall not exceed five hundred feet in width.

"Section 6. The right of eminent domain is hereby vested in and conferred upon any corporation which may acquire the license, privilege or franchise under Chapter 11640, Acts of 1925, to construct, maintain and operate said bridges, causeways or fills for the purpose of acquiring lands and rights of way necessary for the construction and operation of said toll bridges or approaches thereto."

The franchise granted to George J. Rosenthal was in full force and effect when this Act was passed and the legislative Act constituted an implied ratification of that franchise because it was the only franchise then existing at the same time the Legislature passed Chapter 15060 in which it specifically recognized, and impliedly approved, the Rosenthal franchise, therein providing:

"That any toll bridge across the water and streams of Monroe County, Florida, which shall constitute part or parts of the 'Over-seas Highway,' and which shall connect any two or more parts of said Highway or the public roads within said County known as Road No. 4-A, and all approaches to said bridges and all property which is used as a part of or appurtenant to said bridges, the construction of which bridges and approaches shall be commenced under a license, privilege or franchise heretofore granted by the County Commissioners of Monroe County, Florida, to construct, maintain and/or operate toll bridges across any waters and streams of Monroe County, Florida, shall be free and exempt from the assessment of any and all tax in the State of Florida by either Monroe County or the State of Florida, or any department of the State of Florida, or any board or district, or commission or municipality; and shall be exempt from the payment of any and all tax in the State of Florida

to either Monroe County, or the State of Florida, or any department of the State of Florida, or any board or district, or commission, or municipality from the time of the commencement of said construction and during the full period of the operation of the said toll bridges by the persons or corporations to whom such license, privilege or franchise has been granted, their heirs, administrators, executors, successors and/or assigns."

This Act referred only to that franchise heretofore granted by the Board of County Commissioners of Monroe County. And so we have it, that the legislative construction of Chapter 11640 was that it authorized the Board of County Commissioners of Monroe County to grant an exclusive forty years franchise.

It appears to us that an exclusive franchise so far as this particular area was concerned was the necessary intendment of the legislature for the reason that the undertaking to construct bridges, causeways and fills to form this connecting link in State Road No. 4-A would necessarily involve the expenditure of millions of dollars and there was no place for the contemplation of the construction of more than one line of bridges, causeways and fills to connect the two ends of State Road No. 4-A. An exclusive franchise was the only sort of franchise which could have been reasonably contemplated for this construction. The County Commissioners were authorized by the Act to determine all conditions of the franchise, which means all *reasonable* conditions. The exclusive feature of the franchise was not an unreasonable one and it may be a condition necessary to the effecting of the purpose intended.

It is also contended that the Act is invalid because it is in conflict with Section 20, Article III of the Constitution.. We think that the opinions and judgments of this Court in the cases of Lainhart v. Catts, 73 Fla. 735, 75 Sou. 47; City

of Jacksonville v. Bowden, 97 Fla. 181, 64 Sou. 769, and State *ex rel.* Young *et al.* v. Duval County, 76 Fla. 180, 79 Sou. 692, settled the question here involved adversely to the contention of the Relators.

It is next concluded that the County Commissioners of Monroe County could not extend, by resolution passed from time to time, the commencement of the performance of the contract. No authority is cited to support this contention and we think the franchise as extended by the resolution, *supra,* from time to time retained its vitality to the same extent it would have existed had the time for the furnishing of the bond been fixed in the original franchise within a period ending at the close of December 31, 1932. The resolutions extending the time for the furnishing of the bond upon each occasion ratified and confirmed the franchise as originally written and executed and so extended. It will be observed that the franchise required none of the other conditions, except the giving of a bond, to be performed, within any specific period of time, except that actual construction was to begin within three months after the furnishing of the bond. This bond was required to be in a very large amount, one-half million dollars, and certainly the County Commissioners must have contemplated that the bond would not be given until the grantee of the franchise should have all financial and other arrangements made looking to the expenditure of several millions of dollars incident to the construction.

It is contended that the provision of procuring the approval and permission of the U. S. War Department for the construction and also procuring the consent and approval of the State Road Department as set out in the franchise were conditions precedent to the existence of the franchise and it is further contended that Rosenthal has forfeited the

franchise and his right to the franchise by failure to furnish the bond required within the period of last extension.

Whether approval and permission of the War Department was a condition precedent to the existence of the franchise, or whether or not the requirements to be obtained from the State Road Department were conditions precedent need not be here determined. It is certain that both permits would necessarily precede the furnishing of the bond because the grantee of the franchise under its terms could not construct the toll bridge, causeways and fills without these permits and no sane person would post a half-million dollar bond without first having these permits under which the construction could proceed.

The Relators here are not in position to take advantage of the non-performance of Rosenthal in the required furnishing of the bond within the period fixed in the last extension because the record shows that while this latter extension and therefore the franchise was in full force and effect, on the 22nd day of Sept., 1932, which was three months and eight days prior to the expiration of that time, the County Commissioners of Monroe County by resolution undertook to approve the granting of an exclusive franchise to Overseas Bridge Corporation by the State Road Department and the State Road Department on the 24th day of September, 1932, undertook to grant to Overseas Bridge Corporation an exclusive franchise over the same area hereby involved and thereby, as was said in our opinion in the case of State *ex rel.* Landis, *et al.,* v. Overseas Bridge Company:

"The Board of County Commissioners placed Rosenthal in a position where he could not safely proceed to carry out his obligation to furnish the bond. In other words, the Board of County Commissioners had joined in an act which was equivalent to a breach of the contract on its part and

which changed the position of Rosenthal to his detriment."

By this act, which appears to have been the initiative act toward interrupting Rosenthal in the process of carrying out his contract, the County Commissioners, acting as the instrumentality to which the Legislature had delegated the power of granting the franchise, interrupted and abated the tolling of the limitation of time in which Rosenthal was required to perform his contract and from that day, the 23rd day of September, 1932, up to the present time the record shows that the County Commissioners of Monroe County have continued to obstruct Rosenthal in the performance of his contract, even to the institution of this proceeding.

It is too well settled to require citation of authorities that one party to a contract cannot take advantage of an alleged breach which was necessitated by his own conduct in indulging in an act which would reasonably prevent the possibility of the other party performing the contract.

It may be contended that the State is not bound by the action of the Board of County Commissioners, but this contention can not be successfully maintained because the State selected the Board of County Commissioners as its vehicle through which it granted this franchise.

The writer hereof is not at all certain that the State is not estopped to question the validity of this Rosenthal franchise, because the State through its Attorney General on the 10th day of December, 1932, filed an information in the nature of *quo warranto* in this Court against Overseas Bridge Corporation in which it was alleged that a pretended franchise attempted to have been granted to Overseas Bridge Corporation by the State Road Department of the State of Florida was void because of the existence of this (the Rosenthal) franchise which, it was therein alleged, was in all respects valid, and that because of its existing as a valid franchise the State Road Department was precluded

from granting such pretended franchise by Section 8, of Chapter 14024, Acts of 1931. The result of that litigation was in conformity with the contention of the State through its Attorney General in that case. In other words, the State has in this Court set up the Rosenthal franchise as a bar to the validity of another franchise for which there was no authority if the Rosenthal franchise was valid and has maintained in that suit that the Rosenthal franchise was and is valid, and, after having procured a judgment of this Court in its favor, now, in this case, assumes to change front and to say in this Information, in effect, that there was no foundation for the former suit which it had successfully maintained and that it now challenges the very foundation upon which it based its right to maintain that suit.

It appears to me that the Rosenthal franchise here under consideration was a valid franchise on the 23rd day of September, 1932, when the County Commissioners of Monroe County, by a resolution approving the franchise sought to be obtained from the State Road Department in favor of Overseas Bridge Corporation, and thereby in effect made it impracticable, if not impossible, for Rosenthal to proceed toward carrying out his contract insofar as such franchise authorized Rosenthal to construct, operate and maintain toll bridges, causeways and fills for a period of forty years, as above stated; that such franchise was exclusive and that by the conduct of the County Commissioners the tolling of the time covered by the last extension of such franchise had been abated for a period of time equivalent to that which elapsed between the 22nd day of September, 1932, and the 1st day of January, 1933. Hall *et al.* v. Hardacre, 61 Fla. 267, 57 Sop. 977, and authorities there cited. State *ex rel.* Mylrea, Attorney General v. Janesville Water Power Co., 92 Wis. 496, 32 L. R. A. 391, text L. R. A. 393; Attorney General v. Buckley Lumber Co., 146 Mich. 625, 130 N. W.

200; Wallis v. Wenham, 90 N. E. 396, 17th Anno. case 644 and note; McGowan v. American Pressed Tanbark Co., 30 L. Ed. page 1027. See 6 R. C. L. page 986; 14a C. J., page 1128, Sec. 3744; 26 C. J. page 1044, Sec. 115.

Whether or not the so-called bond sought to be furnished by Rosenthal was a sufficient bond to satisfy the terms of the franchise need not be here determined, because Rosenthal was not bound to furnish the bond while the County Commissioners were obstructing his performance of his contract. See State *ex rel.* Landis, *et al.* v. Overseas Bridge Corporation, *supra.*

I may say, however, that the rule is well settled that the terms and conditions of a franchise are to be construed more strongly against the grantee of such a franchise and, therefore, it is not to be construed that I would hold that such a bond as was tendered would be sufficient to satisfy the terms of the franchise, that bond having contained certain provisions not specifically provided for in the contract and having been executed only by the obligor without sureties.

For the reasons stated, I am unable to agree with my associates.