WIGGINTON, Acting Chief Judge.
The defendants in this action have appealed a final declaratory decree rendered pursuant to F.S. Chapter 87, F.S.A., the effect of which is to hold invalid a provision of a written lease contract by which the City of Panama City granted to the remaining defendants an exclusive franchise, right, concession, or permit to furnish catering services to a public auditorium owned by the City and located on property developed as a civic center and marina. Appellants contend that the chancellor erred in holding the mentioned provision of the lease to be void on the grounds of public policy.
Appellant, City of Panama City, leased to appellant, J. Rowe Sudduth, who in turn subleased to appellant, The Four Winds of Panama City, Inc., the administration building located on the Panama City Civic Center and Marina for the purpose of operating therein a restaurant and cocktail lounge. The lease contract includes the following additional provision, the construction of which gave rise to this litigation, to wit:
“ * * * As a further consideration for the covenants provided herein, the LESSOR hereby grants to the LESSEE the exclusive catering rights to the auditorium on the said Marina, shown in Exhibit ‘A’, provided that the LESSEE shall render able, efficient, courteous and reasonable service in connection therewith.”
The stipulated facts on which the chancellor relied in rendering the decree appealed are that the City auditorium, in which defendant J. Rowe Sudduth was granted the catering rights here complained of, is not now nor has it ever been used or devoted to the carrying on of ordinary city *192 business of defendant City of Panama City, Florida, but is available for rental by members of the general public and associations or groups for holding private meetings, conventions, musicals, plays, and similar activities; that the auditorium was constructed from the proceeds of the sale of municipal bonds of said City, and is under the exclusive control 'of the officers and agents of said City; that the auditorium is a separate building with approximately seven hundred feet, including a street, separating it from the administration building described on the first page of the lease agreement attached to the complaint.
By their respective answers, the appellants lessor, lessee, and sublessee denied that the provision of the lease assaulted by the complaint was invalid, and interposed the affirmative defenses of estoppel and laches.
As a basis for holding void that provision of the lease which granted to the lessee the exclusive catering rights to the auditorium located on the civic center and marina property, the chancellor found that such provision creates a monopoly, strikes at free enterprise, stifles lawful competition, is in restraint of trade, is detrimental to the public good and is adverse and harmful to other catering services of like kind.
Appellee supports the correctness of the decree appealed upon the basic theory of law that the right or privilege granted by the City to appellant lessees is an exclusive franchise which the City is prohibited from granting in the absence of special statutory authority empowering it to do so.[1] It is conceded that neither the charter of the City of Panama City, nor the special act authorizing the City to construct and operate the civic center and marina involved in this proceeding, specifically confers upon the City the right to grant ex-elusive franchises to private individuals for the performance of any of the functions vested in the City under its charter, the general law or the special act mentioned above.
Appellants contend, and we agree, that the City’s act in granting to Sudduth the exclusive right, privilege, concession, or franchise to furnish catering services to the auditorium was done in the exercise of a proprietary as distinguished from a governmental function. The authority of the City to issue and sell revenue bonds and use the proceeds thereof in the acquisition, construction, and operation of the civic center and marina was conferred upon the City by Chapter 11678, Laws of Florida, Extraordinary Session of 1925, as amended (by the City charter) and Section 167.21, Florida Statutes 1955, F.S.A. The powers of the City in this regard are set forth in detail in the decision validating the bonds issued by the City for the acquisition and construction of the marina and civic center, rendered by the Supreme Court in the case of Panama City v. State of Florida.[2] Among other things, the City is empowered to acquire and use any real estate or personal property of any kind including recreational facilities and auditoriums and, if found desirable or expedient, may lease, rent, or otherwise dispose of all or any part of such property for the benefit of the City. It is specifically empowered to erect all necessary public buildings and to control and dispose of them as the interest of the City may require, and to do and perform all such other act or acts as shall seem necessary and best adapted to the improvements and general interest of the city or town. The resolution authorizing the issuance of the bonds to acquire, construct, and maintain the project are to be retired solely and exclusively from funds derived from the net revenues of the *193 revenue producing facilities of the project, and from the proceeds of excise taxes theretofore authorized by sundry ordinances of the City on the sale of cigarettes, utility services, and from license taxes and franchise taxes. From the foregoing it appears without serious dispute that the City is authorized to construct an auditorium and to operate it in such manner as will be to the best interest of the City of Panama City. Incidental to this power is the right to furnish catering services to those groups or organizations renting the building, and to derive from such rentals and from the net profits of the catering services revenues which may be utilized in maintaining the property and retiring the bonds issued for its acquisition. Such a function is clearly proprietary in nature, and cannot be considered governmental in the traditional sense.
Having concluded that the action of the City in granting an exclusive lease for the furnishing of catering services to those utilizing the auditorium located on the civic center and marina to have been performed in the exercise of a proprietary function of the city government, we next turn to a consideration of whether under these circumstances the exclusive franchise, permit, concession, or right is prohibited by the general law relating to this subject.
In a case strikingly similar to the one sub judice the Supreme Court considered the validity of an exclusive right, privilege, or franchise granted by the Dade County Port Authority to a private corporation for the solicitation and transportation of passengers from Miami International Airport to points about the city. The special act creating the Dade County Port Authority designated the Board of County Commissioners of Dade County as the Authority, and granted to it the power to acquire, construct, maintain, and operate the airport and facilities in a manner consistent with the best interest of the county and the communities situated therein. These powers are generally similar in most respects to the powers granted the City of Panama City in the case sub judice. In defining the character of the functions performed by the Board of County Commissioners as members of the Port Authority, the Supreme Court said:
“In the case at bar we are confronted with a function vested in the Dade County Port Authority that is essentially proprietary and in no respect governmental. * * *
“When given authority to do so a governmental entity is expected to perform a proprietary function under like rules and regulations as those pursued by private individuals. No one would contend that a private or a public service corporation would be barred from entering into an exclusive contract like that involved here if the necessities of its business required. When county commissioners are clothed with a proprietary function wherein they are responsible to the public for prompt and efficient service, it necessarily follows that they must be clothed with power to enable them to meet such requirements and we think the act in question does this.
******
“When a governmental entity is authorized to exercise a power purely proprietary, the law leans to the theory that it has full power to perform it in the same efficient manner as a private person would do. * * * ”[3]
In distinguishing the rule of law applicable to an exclusive franchise granted by a governmental entity in the exercise of proprietary function from a like franchise granted in the exercise of a govern *194 mental function, the Supreme Court, in the Miami Beach Airline Service case, supra, said:
“ * * * We have examined Capitol City Light & Fuel Co. v. City of Tallahassee, 42 Fla. 462, 28 So. 810; State ex rel. Landis v. Rosenthal, 109 Fla. 363, 148 So. 769; State [ex rel. Biscayne Stevedoring Co.] v. Turner, 143 Fla. 424, 196 So. 816, and other cases relied on by appellant, but we do not think they rule the case at bar. These cases treat the use of city streets, the granting of licenses and the conduct of other functions by the municipality impressed with [some] phase of a governmental aspect. In such cases, the law is well settled that the granting power must avoid monopolies that hamper it in its governmental capacity as well as contracts that tend to create such monopolies.” [4]
In the case of Colen v. Sunhaven Homes, Inc., supra, the Supreme Court considered the validity of an exclusive franchise granted by, the Board of County Commissioners of Pinellas County to a private individual to use county streets, alleys, and public rights of way found necessary for the installation of a sanitary sewerage disposal system and a water distribution system to serve a specified area of the county. The court held that no special or general law specifically empowered the Board of County Commissioners of Pinellas County to grant an exclusive franchise to an individual for the use of the county roads, streets, and public places in the performance of an activity which would traditionally be considered a governmental function. In distinguishing the rule in that case from the rule applicable to the granting of an exclusive franchise in the exercise of a proprietary function the court, in commenting upon the franchise granted by the Port' Authority in the Miami Beach Airline Service case, supra, said:
“ * * * The Legislature empowered the Authority to ‘Construct, operate and maintain airports, terminals and other transportation facilities’ within the county and expressly authorized the ‘execution of agreements and contracts with common carriers to carry out the purposes of the act.’ In this case the Legislature empowered the Port Authority to undertake the actual operation of one of the world’s largest airports, and as such to undertake an affirmative nongovernmental function, proprietory in nature, in the name of the county. It is this distinguishing feature of the nature of the Legislative delegation of authority that sets this case apart from the general rule. The Port Authority was authorized to delegate by exclusive franchise that which it could have exclusively done itself on its own account. It was also pointed out in that opinion that the Legislature would hardly empower the Port Authority to operate such a gigantic facility and still clothe that Authority with less than sufficient power to carry out its purpose, in like manner as a private enterprise. * * *»[5]
In the case sub judice it cannot be disputed but that the City of Panama City is empowered under its charter and the general law of the state to furnish catering services to those groups and organizations renting from it the use of the auditorium located on the civic center and marina, to the exclusion of all other private catering services in the community. In the furnishing of such services, the City would most certainly be functioning in a proprietary capacity. It is only prop *195 er that the City should have some degree of control over the quality of catering services furnished to those renting from it the City auditorium, because on the quality of such services will the desirability of the auditorium as a meeting place depend. If the City is prohibited from controlling through the vehicle of an exclusive lease, concession, or franchise, the type and quality of catering services furnished to those using the auditorium, the desirability of the auditorium as a meeting place might well be impaired. Secondarily, but perhaps of even greater importance, is the revenue which the City’s agreement with appellant Sudduth will produce from the catering services he will furnish-pursuant to the concession granted him in the lease contract. The lease provides that the compensation payable to the City by Sudduth will be on the basis of a stipulated sum plus a percentage of the gross revenues derived by him in his operations under the lease. It is the City’s obligation to utilize to the fullest extent all the facilities located within the bonded project to the end that the maximum amount of revenue may be realized for the maintenance of the property and retirement of the bonded indebtedness. If the City is prohibited from controlling the catering services to be furnished the auditorium through the means of an exclusive franchise, then the revenues it might receive from this source would be lost or seriously diminished.
It is our view that under the law applicable to the facts in this case the provision of the lease contract here assaulted is valid and binding in all respects, and the chancellor erred in holding it to be void and of no effect. The decree appealed is accordingly reversed and the cause remanded for the entry of an appropriate decree consistent with the views expressed herein.
STURGIS and JOHNSON, JJ., concur.

. Colen v. Sunhaven Homes, Inc. (Fla. 1957) 98 So.2d 501; Capital City Light & Fuel Co. v. City of Tallahassee, 42 Fla. 462, 28 So. 810.

. Panama City v. State of Florida, (Fla. 1957) 93 So.2d 608.

. Miami Beach Airline Service, Inc. v. Crandon, (1947) 159 Fla. 504, 32 So.2d 153, 155, 172 A.L.R. 1425.

. Ibid.

. Colen v. Sunhaven Homes, Inc., supra note 1, 98 So.2d at 504.