STATE, ex rel. POSTAL TELEGRAPH COMPANY, *Petitioner* v. A. S. WELLS et al., as Railroad Commissioners of the STATE OF FLORIDA, *Respondents.*

En Banc.

Opinion filed November 27, 1928.

*Marks, Marks & Holt,* of Jacksonville, for Relators;

*T. T. Turnbull,* of Monticello; *John E.* and *Julian Hart-ridge,* of Jacksonville; *Loftin, Stokes & Calkins,* of Miami, for Respondents.

STRUM, J.—The Postal Telegraph-Cable Company, joined by divers individuals who are patrons of said company, petitioned the railroad commissioners for an order requiring the Jacksonville Terminal Company to admit the Postal Company to the Union Terminal Station in Jacksonville as a tenant for the purpose of operating in said station a branch telegraph office, and to prevent discrimination against messengers of the Postal Company attempting to deliver messages aboard trains at said terminal station. In its petition to the railroad commissioners, the Postal Company asserted, amongst other things, that its only competitor in the southeast, the Western Union Telegraph Company, had been accorded by the terminal company the same privileges and facilities sought by the Postal Company; that the refusal of the terminal company to admit the Postal Company to its station on equal terms with the Western Union was an unjust and unlawful discrimination against the former and its patrons; that the Postal Company maintains offices in many localities not served by the Western Union and that the establishment by the Postal Company of an office in said union station would materially improve the service rendered by the Postal Company to the public in connection with those stations and others; that the facilities for sending commercial telegraph messages afforded the traveling public by the Western Union in the union terminal station are inadequate to the public needs; and that it is therefore essential to the comfort, safety, care, accommodation and convenience of the public that the Postal Company should be permitted to establish an office in said station for the transaction of its telegraph business, and that its messengers be permitted

to deliver messages in said union station under the same conditions as those of the Western Union.

After a hearing which was confined solely to the question of the jurisdiction of the railroad commissioners to entertain the petition, the railroad commissioners dismissed the petition and declined to proceed further upon the ground that the commissioners were without jurisdiction to grant the relief sought.

The Postal Company and its co-petitioners now seek by *mandamus* to compel the railroad commissioners to take jurisdiction and proceed with a consideration of the petition above referred to, upon its merits. The cause comes before us upon a motion to quash the alternative writ of *mandamus* directed to the railroad commissioners heretofore issued by this Court in the exercise of its original jurisdiction.

The Postal Company relies upon Sec. 4618, Rev. Gen. Stats. 1920, as amended by Chap. 8469, Acts of 1921, as vesting the railroad commissioners with jurisdiction to regulate the business of the terminal company in the respects in controversy.

The pertinent provisions of the statute are:

"It shall be the duty of the (railroad) commissioners * * * to make reasonable and just rules and regulations for the prevention of any unjust discrimination against persons or localities in charges or in furnishing facilities * * * And they shall have power * * * to designate the location and require the erection of such * * * passenger depots * * * with all necessary conveniences as the safety, convenience and comfort of passengers * * * may require; to supervise, regulate and control stations, depots * * * to regulate, supervise and control all passenger terminal or union depot companies, whether owned or operated by any railroad in

connection with its main line or by separate company organized for that purpose  *  *  *  to regulate all other matters pertaining to receiving, handling, care, transportation and delivery of property, and to the safety, care, comfort, convenience, proper accommodation and transportation of passengers that shall be for the good of the public  *  *  *''

Petitioners rely upon the following cases, amongst others, to support their contention that under the statute just mentioned the jurisdiction of the railroad commissioners extends to the matters here in controversy: Atchison T. & S. F. Ry. Co. v. State, 100 Pac. R. 11; 21 L. R. A. (N. S.) 900; State v. Missouri Pac. Ry. Co., 161 N. W. R. 270; L. R. A. 1918 E. 346; Cour d'Alene etc. Co. v. Ferrell, 128 Pac. R. 565; 43 L. R. A. (N. S.) 965; Minds v. Penn. R. R. Co., 77 Atl. R. 909; State v. Missouri Pac. R. R. Co., 45 N. W. R. 785; Little Rock, etc. Ry. Co. v. Oppenheimer, 43 S. W. R. 150; 44 L. R. A. 353; Railroad Com'rs v. F. E. C. Ry., 67 Fla. 83, 64 So. R. 443; L. & N. R. R. Co. v. Railroad Com'rs, 63 Fla. 491, 58 So. R. 543; State, ex rel. Ellis v. A. C. L. R. R. Co., 51 Fla. 543, 41 So. R. 529; 12 L. R. A. (N. S.) 506; and State v. Jacksonville Terminal Co., 41 Fla. 377, 27 So. R. 225. See also Indian River Steamboat Co. v. East Coast Transp. Co., 28 Fla. 387, 10 So. R. 480, 29 Am. St. R. 258.

The cases just mentioned all relate to the regulation of common carriers in respect to facilities which are factors in the proper performance of their duties to the public *as common carriers*. The first case held that it was competent to require a railroad company to install telephone service in order to facilitate transactions with it by its patrons in connection with the conduct of its business as a common carrier. The second also held that the furnishing of adequate telephone facilities for the transaction of the

public business of the carrier is one of its functions which might be regulated by law. All the other cases just mentioned involved facilities which are factors in the proper performance by the carrier of its duties as such, with respect to which it was properly held that there could be no unjust discrimination and that such facilities must be adequate to the public needs.

The question now before us is whether the railroad commissioners have power to require the terminal company to admit to its premises the Postal Company, under like terms as the Western Union is admitted, for the purpose of enabling the Postal Company to there carry on its own independent business of furnishing to the public facilities for sending commercial telegraph and cable messages unconnected with the business of the terminal company as a common carrier of freight and passengers, no contention being made that the telegraph facilities furnished by the terminal company in the discharge of its public duties or for the transaction of business between its patrons and itself as a common carrier are inadequate or discriminatory.

The principles here involved are related to those considered by the Supreme Court of the United States in the so-called "Express Cases," 117 U. S. 1; 29 L. Ed. 791, the decision in which was, in effect, that the right of an express company to transportation by a railroad common carrier rested upon contract, and that so long as the public was afforded reasonable express facilities the service might be extended to one express company to the exclusion of others having no contract. In other words, the Court held that in the absence of a controlling statute or custom, railroads are not common carriers of other common carriers so as to charge the railroads with the public duty of carrying all express companies in the way that the express carriers, when taken, are usually carried; as they are with the

duty of carrying all passengers and freight, when offered, in the way that passengers and freight are usually carried. See also 10 C. J. 476.

There is no conflict between the "Express Cases," just referred to, and the case of State, ex rel. Ellis, v. A. C. L. R. R. Co., *supra*, decided by this Court. In the latter case it was held by this Court that where a railroad company furnished to the Western Union Telegraph Company certain facilities of transportation, and for loading and unloading its poles and other equipment along the right of way of the railroad, and without sufficient excuse refused to furnish the same service to the Postal Company on like terms, that such refusal is an unjust discrimination in its duties as a common carrier which the railroad commissioners have authority to make just and reasonable rules and regulations to prevent, even though such service was furnished to the telegraph company first named under special contract. The decision in that case was upon the ground that the service there demanded by the Postal Company was within the scope of the railroad's duties as a common carrier of freight and passengers and a character of service for which it held itself out to the public as a common carrier. It is the latter aspect of that case which also distinguishes it in principle from the case at bar.

In State v. Jacksonville Term. Co., 41 Fla. 377, 27 So. R. 225, an action brought to require the terminal company to admit a railroad company to its station, the decision, so far as it touches the question here under consideration, is based upon the proposition that the property of the terminal company, while devoted to public use as a common railroad terminal, is necessarily and essentially "an instrumentality employed in the common carrier's business," and is therefore affected by a public interest as much as the carrier's property. That decision was also vitally affected by the provisions of Chap. 4700, Acts of

1899, giving the railroad commissioners express authority to regulate the particular class of public service offered by the terminal company as a common carrier, and for which it was chartered by the State.

The powers and duties of the railroad commissioners' enumerated in Chap. 8469, *supra*, when applied to terminal companies, have reference to the public duties of such companies as common carriers, and not to auxiliary or accessorial services they may render incidentally to their duties as a common carrier but which are not embraced within the latter. The ''facilities'' and ''conveniences'' referred to in that statute are those which are factors in the performance by the terminal company of its public duties as a common carrier.

For purposes of public regulation, there is a fundamental distinction between the acts of a common carrier in the performance of its public duties as such, and those done in the exercise of its purely private right to manage and control its own property in matters not embraced within its public duties. Fluker v. Georgia R. & Baking Co., 8 So. E. R. 259, 2 L. R. A. 843; Kates v. Atlanta B. & C. Co., 34 So. E. R. 873, 46 L. R. A. 431.

The right of the State to regulate transportation by common carriers within the State extends to every phase of its service as a common carrier and to every act that affects such service. State v. A. C. L. R. R. Co., 60 Fla. 465, 54 So. R. 394. But while the public business of the carrier is subject to regulation in the public interest, the property itself belongs to the carrier, and as against those not desiring to use it for the purpose for which it is devoted to the public use, it is private property. There is no public duty upon the carrier to so use its property that others who have no business with it as a common carrier may make profit for themselves. Under the guise of regulation the

State can not require the property of the carrier to be devoted to a public service the carrier is under no duty to furnish. State v. Jacksonville Term. Co., 90 Fla. 721, 106 So. R. 576; Donovan v. Penn R. R. Co., 199 U. S. 279, 50 L. ed. 192; Delaware L. & W. R. R. Co. v. Town of Morristown, 72 L. ed. (U. S.) 274.

In the performance of its duties and obligations arising from its character as a common carrier the terminal company can not grant to any person, or persons, rights, privileges or facilities which it refuses to others. In the management and control of its property, however, in matters unconnected with and beyond the scope of its duties as a common carrier and not affecting its duties as such, the terminal company, as an incident to ownership, may grant to some concessions which it denies to others, provided it acts in good faith and its actions in that respect are consistent with the proper performance of its public duties as a common carrier. Western Union Tel. Co. v. Penn. R. R. Co., 195 U. S. 540, 49 L. ed. 312; Missouri Pac. Ry. Co. v. Kohler, 193 Pac. R. 323, 15 A. L. R. 333; Skaggs v. Kansas City Term. Co., 233 Fed. 827; Donovan v. Pennsylvania R. R. Co., 199 U. S. 279; 50 L. ed. 192; Black & White Taxi Co. v. Brown & Yellow Taxi Co., 72 L. ed. (U. S.) 383; See also 15 A. L. R. 333, et seq., and note beginning on page 356.

In permitting the terminal company to thus regulate its own private affairs, no rights of the public are invaded. A passenger has the right to be carried and to enjoy equal privileges with other passengers, or at least to be exempt from unjust or offensive discrimination in favor of other passengers. But in matters not embraced in or affecting the contract of carriage he has no right to demand that the carrier shall surrender in any respect rights incidental to its ownership of the property.

The terminal company is not engaged in the commercial telegraph business. Its public business and duties are those of a common carrier of passengers and freight. It is under a duty to furnish all facilities and conveniences reasonably necessary to the discharge of the latter duties, amongst which are adequate telephone and telegraph facilities so that the public may conveniently communicate with it concerning the transaction of its public business as a common carrier. Atchison T. & S. F. Co. v. State, 100 Pac. R. 11, 21 L. R. A. (N. S.) 900; State v. Missouri Pac. Ry. Co., 161 N. W. R. 270, L. R. A. 1918 E. 346. But neither by Statute nor by custom having the force of law at this time is the terminal company required, as a part of its public duty as a common carrier, to afford the Postal Company, as the operator of a distinctly commercial telegraph system, facilities for plying its own business on the premises of the terminal company, even though the terminal company by special contract grants such a privilege to another company. Nor is the terminal company under a public duty to afford to patrons of the Postal Company facilities for carrying on their business with the latter company upon matters unconnected with the public duties of the terminal company as a common carrier, even though the public might derive incidental convenience therefrom.

Since the terminal company is under no legal compulsion as a part of its duties as common carrier to furnish the facilities sought by the Postal Company and its patrons for the purpose here.involved, the right to be accorded such facilities rests solely upon contract. Since the right rests upon contract, the terminal company, so long as the performance of its duty as a common carrier is not impaired, may contract with one telegraph company to the exclusion

of others. Atchison T. & S. F. Ry. Co. v. State, 100 Pac. R. 16; Woody v. Denver & R. G. R. Co., 132 Pac. R. 250.

The privileges sought in this action by the Postal Company and its patrons are comparable to those frequently granted by carriers to other persons to supply the incidental wants of travellers in the sale of books, papers, food or refreshment on the property of the carrier, or to solicit patronage in the transfer of baggage, or to taxicab companies to solicit business in the transportation of passengers to and from the terminus of the carrier. Those services are commonly incidental to the duties of a common carrier but are outside the public duty of the carrier until voluntarily assumed, although the carrier of course is under a public duty to afford its patrons, with their hand baggage, convenient and adequate means of reaching and departing from the street door of its station. It is therefore held by the great weight of authority that the carrier may lawfully enter into contracts granting to one the exclusive right to exercise privileges of the character just mentioned on the property of the carrier to the exclusion of others. Because the carrier by special contract has granted to one the right to enter upon its property to carry on an independent calling not embraced within its duties as a common carrier that action does not extend to all others who may desire to engage in a like calling the right to enter upon the property of the carrier for a like purpose. Missouri Pac. R. R. Co. v. Kohler, 193 Pac. R. 323, 15 A. L. R. 333; Mader v. City of Topeka, 189 Pac. R. 969, 15 A. L. R. 340; Thompson's Express Co. v. Mount, 111 Atl. R. 173, 15 A. L. R. 351, and note; Donovan v. Pennsylvania R. R. Co., 199 U. S. 279, 50 L. Ed. 192; Old Colony R. R. Co. v. Tripp, 17 N. E. 89; Bingham, etc. Co. v. Duluth, etc. Ry. Co., 130 N. W. R. 24, 32 L. R. A. (N. S.) 1181; Black and White Taxicab Co. v. Brown and Yellow Taxicab Co., 72 L. Ed. (U. S.) 383. Of

course a different case might arise if the carrier were under a legal duty to allow commercial telegraph companies to carry on their business on the carrier's property.

To grant an exclusive privilege to the Western Union for the purpose under consideration is not a monopoly in the odious sense of the word (Donovan v. Pennsylvania R. R. Co., *supra*); nor is it against public policy (Black & White Taxicab Co., v. Brown & Yellow Taxicab Co., 72 L. ed. (U. S.) 383; Baggage & Omnibus Transfer Co. v. City of Portland, 164 Pac. R. 570; L. R. A. 1917 F. 1080); nor is it in restraint of trade (Chicago, etc. R .R. Co. v. Pullman Southern Car Co., 139 U. S. 79; 35 L. ed. 97); nor does the granting of such rights to the Western Union amount to a waiver on the part of the terminal company so as to require a like waiver as to the Postal Company (People v. Western Union, 46 N. E. R. 731).

The principles herein discussed are exemplified in the several decisions of this Court relating to the contract between the Jacksonville Terminal Company and a baggage transfer company in Jacksonville, granting to the latter certain exclusive rights upon the premises of the terminal company in carrying on the business of transporting passengers' baggage to and from the terminal station. We held that the service rendered by the baggage transfer company is accessorial in its nature, one which the law does not require a common carrier to perform, and therefore so far as the demands of a rival baggage transfer company for equal privileges were concerned the terminal company might lawfully grant to one of such baggage transfer companies the exclusive right to transact such business upon the premises of the terminal company so long as that privilege was not exercised so as to cause unjust discrimination affecting passengers. State v. Jacksonville Term. Co., 90 Fla. 721, 106 So. R. 576. In State v.

Jacksonville Terminal Co., 117 So. R. 869, discriminations against passengers themselves were under consideration, and the order of the railroad commissioners there in question was sustained as reasonable because, as we therein said, a terminal company may not arbitrarily subject one class of passengers to an inconvenience in the matter of identification of baggage from which under substantially the same circumstances it protects and saves another class, and if it attempts to do so such action constitutes discrimination in the performance of the duties of the terminal company as a common carrier. The principles discussed in the latter case are not applicable to this case because no showing is here made of an unjust discrimination affecting passengers in the enjoyment of their rights as such. The jurisdiction of the railroad commissioners to make reasonable regulations concerning the checking of baggage rests upon the fact that it is one of the duties of a common carrier of passengers to receive and transport the personal baggage of a passenger, and a part of such duty is the furnishing of convenient facilities for receiving, handling and checking such baggage without unjust discrimination between passengers. State v. Jacksonville Terminal Co., 90 Fla. 721, 106 So. R. 576.

Neither under Chap. 8469, *supra,* nor any other statute or existing custom to which our attention has been directed is the terminal company compelled to share the use of its union station with commercial telegraph companies seeking to use such station only to solicit custom for themselves, nor to furnish patrons of such telegraph companies with facilities for carrying on their business with such telegraph companies upon matters unconnected with the performance of the public duties of the terminal company as a common carrier. The railroad commissioners are therefore without power to compel the terminal company to permit its

premises to be used for that purpose. Whether a statute making the furnishing of such facilities a part of the public duties of the terminal company as common carrier would be valid we need not now consider, as such question is not before us.

Assuming that where a terminal company voluntarily undertakes to render an accessorial service, such as the furnishing of facilities for the sending of commercial telegraph messages, the facilities furnished must be adequate; and asuming further that the facilities so furnished by the terminal company in this instance are inadequate, that circumstance does not convert a privilege into a right so as to authorize the railroad commissioners either at the instance of the Postal Company or its patrons, to specifically order that the Postal Company be admitted to the premises of the terminal company, over the protest of the latter, for the purpose of carrying on its commercial telegraph business. Under such circumstances, an order might be made in the exercise of the power of regulation compelling the terminal company to provide adequate telegraph facilities, but to specifically order the admission of a particular company would invade the field of private management into which public regulation may not enter. State v. A. C. L. R. R. Co., 60 Fla. 465; 54 So. R. 394; See also State v. Western Union Tel. Co., opinion filed August 1, 1928; 118 So. R. 478. If the service is one which the terminal company is under a public duty to furnish, then so long as the service provided is adequate to the public needs, the public is not concerned with the selection of the particular agency through which the service is supplied. Chicago, etc. R. R. Co. v. Pullman Southern Car Co., 139 U. S. 79, 35 L. ed. 97; Old Colony R. R. Co. v. Tripp, 17 N. E. R. 89.

The motion to quash the alternative writ should be, and the same is hereby granted.

ELLIS, C. J., AND WHITFIELD, TERRELL, BROWN AND BUFORD, J. J., concur.