Fried, Appellant, *v.* Pennsylvania Public Utility Commission et al.

Argued October 2, 1942.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, RHODES, HIRT and KENWORTHEY, JJ.

*Joseph Sharfsin,* with him *Harry M. Penneys,* for appellant.

*Samuel Graff Miller,* with him *Allen Lesley, Harry M. Showalter* and *Claude T. Reno,* Attorney General, for appellee.

*Desmond J. McTighe,* of *Fox & McTighe,* for intervening appellee.

OPINION BY KENWORTHEY, J., January 28, 1943:

In Norristown, moving picture theatres are closed on Sundays as a result of a special election in 1940; they are not closed in neighboring Conshohocken. Appellant is the owner and operator of a motion picture theatre, the Riant, in Conshohocken. Respondent operates a bus line between Conshohocken and Norristown. The Norris Amusement Company (hereafter called Norris) owns and operates several moving picture theatres in Norristown. "For some years" prior to 1940, the bus company had an agreement with

Norris providing for the transportation of passengers from Conshohocken to Norristown upon combination round-trip tickets bearing admission coupons to the theatres of Norris. The price of the tickets is 40¢, of which the bus company gets 15¢ and Norris 25¢. The service is available weekdays only.

The bus company has offered the same service to appellant, viz, to have its operators *on week-days,* sell combination round-trip bus and theatre tickets to Norristown persons desiring to go to the movies in Conshohocken. Appellant refused the offer; he demanded that the bus company render the service *seven* days a week, and when the bus company refused, he filed the present complaint.

His argument is that since the bus company renders the service to Norris during all the days its threatres are open, an offer to serve him on less than all the days *his* theatre is open is an unreasonable discrimination.

After hearing evidence, the Commission dismissed the complaint.

The truth of the matter is appellant is interested in the service on Sunday only; the Norristown theatres show more recent releases and the chances are no one living in Norristown would think of going to Conshohocken to the movies except on Sunday when their own are closed. Stripped of the frivolous rhetoric about wanting to render a public service to the down-trodden minority in Norristown who voted in favor of Sunday movies, but lost the vote, appellant's effort is to capitalize on the closed houses in Norristown by siphoning off some of its movie business. And he thinks the bus company should help him.

It must not be overlooked that Sunday transportation is now available at the *regular* rates and appellant doesn't seek any increase in the bus company's facilities or schedules. And there is nothing to prevent appellant, if he so desires, from reducing the price

of tickets to his theatre on Sunday to Norristown customers.

The bus company refused to give the service principally on the ground that by doing so it would lose the good will of large groups who are opposed to Sunday movies on moral and religious grounds. And that it is the part of wisdom for public utilities to avoid involvement in the political controversies of their customers is too apparent to warrant discussion; it was underscored by the presence at the hearings of representatives of the Norristown Council of Churches and the Law and Order League who militantly opposed the granting of the service to appellant whereas appellant produced no supporting witnesses. And in this connection, although the explanation was freely given, the burden of proving discrimination was on appellant, and the bus company was not obliged to make any explanation whatever unless and until appellant made out a prima facie case.

The question is whether the Commission, acting in its judicial capacity, abused its discretion or committed an error of law in holding that the refusal of the service did not result in an unreasonable discrimination.

Section 402 of the Public Utility Law, Act of May 28, 1937, P. L. 1053, 66 PS §1172, provides: "No public utility shall, *as to service,* make or grant any unreasonable preference or advantage to any person ...... or subject any person ...... to any unreasonable prejudice or disadvantage. No public utility shall establish or maintain any unreasonable difference *as to service,* either as between localities, or as between classes of service, but nothing herein contained shall be deemed to prohibit the establishment of reasonable classifications of service." (Italics supplied).

Counsel for the Commission argues that appellant has no standing whatever to raise the question of dis-

crimination; that he is not a patron or user of the bus company; that the company's contract with Norris was for a service—the selling of movie tickets by its bus drivers—not impressed with a public interest but in its proprietory capacity; and that, in such capacity and for such service, the company had a right to make an exclusive contract with whomever it pleased. See *Lehigh R. R. Co. v. Graham,* 64 Pa. Superior Ct. 437; *Donovan v. Pennsylvania Company,* 199 U. S. 279, 50 L. Ed. 192; *Florida ex rel. Postal Telegraph & Cable Co. v. Wells,* 96 Fla. 591, 118 Southern 731; *Thompson's Express & Storage Co. v. Mount,* 91 N. J. Eq. 497, 111 A. 173. If the service rendered Norris were limited to a sale of movie tickets by the bus drivers, we would be inclined to agree that this position is sound. But the regular round-trip fare is 20¢. The bus company thus offers, as a part of the combination, a cut-rate excursion ticket for its transportation service. We shall emulate the action of the Commission—as distinguished from the present position of its counsel—let appellant have his standing, and dispose of the case on its merits.

But we are not called upon to decide whether the bus company could have refused appellant *any* combination service; it has offered him exactly the same. *service*—a combination week-day service—that it renders Norris.

We have italicized the word "service" in the last paragraph and in section 402 because it is the key word. Public utilities are obliged to render service to the public without any unreasonable discrimination. But they are not bound to explore the business idiosyncrasies of each person who may be indirectly affected by the service and, upon finding certain inequalities, re-arrange and re-organize the service so that A, B, and C all get the same *benefit* from it. The Telephone Company, for years, has rendered toll service at reduced rates on Sundays and holidays. Would anyone seriously con-

tend that a customer, upon showing that he was unable to get any benefit from the favorable rates, could compel the company to render a similar service to him on Tuesdays or Wednesdays?

Appellant's argument falls by its own weight.

We think the action of the Commission entirely correct.

The order is affirmed.