**MIAMI BEACH AIRLINE SERVICE, INC., a Florida Corporation, v. C. H. CRANDON, HUGH PETERS, PRESTON B. BIRD, VAL C. CLEARY and I. D. MAC VICAR, as and constituting the Board of County Commissioners of Dade County, Florida, acting as DADE COUNTY PORT AUTHORITY.**

32 So. (2nd) 153                    June Term, 1947
October 7, 1947                         Division A

Hathanson, Oka & Spaet, for appellant.

J. Mark Wilcox and Hudson & Cason, for appellees.

TERRELL, J.:

The legislature of 1945 enacted Chapter 22963, designating the Board of County Commissioners of Dade County as the Dade County Port Authority and clothing it with numerous powers, the most important of which was to own and operate "landing fields, water areas for the landing and taking off of air craft, hangars, shops, busses, trucks, and all other facilities for the landing, taking off, operating, servicing, repairing and parking of aircraft, and the loading and unloading and handling of passengers, mail, express and freight, administration buildings, tunnels, causeways and bridges connected therewith or incident or auxiliary thereto, and may include all title and other property rights, easements and franchises relating to any such project and deemed necessary or convenient for the acquisition, construction, purchase or operation thereof."

Other provisions of the act authorize the Dade County Port Authority to enlarge, construct and reconstruct such projects as are named in the preceding paragraph, to acquire lands by grant, gift, purchase, exchange or condemnation for that purpose, to execute agreements and contracts with railroads, steamship lines, air lines and other common carriers to carry out the purpose of said act, to fix and regulate rates and collect charges for the services and facilities furnished and to perform all other acts necessary to the exercise of the powers so conferred.

Pursuant to power so conferred the Dade County Port authority acquired title to and has since been operating Miami International Airport (formerly known as 36th Street Airport, or Pan American Airport). On March 8, 1946, the Dade County Port Authority entered into contract with Red Top Cab and Baggage Company, granting it the exclusive concession to transport passengers from the Miami International Airport to points about the city. This contract also gave the Red Top Cab and Baggage Company exclusive right "to transport by bus or similar vehicle, passengers of the Commercial Airlines between the ticket office of said airlines and said airport," when requested by the airlines using the airport to do so.

This suit was instituted January 9, 1947, by bill in equity on the part of Dade County Port Authority to restrain appellant, Miami Beach Airlines Service, Inc., from soliciting passengers for hire within the property known as Miami International Airport, and from loading passengers for hire into its busses on said property and to declare the contract between Dade County Port Authority and Red Top Cab and Baggage Company a valid contract. The defendant answered the bill of complaint and challenges the authority of the Dade County Port Authority to execute and enforce said contract. As a further defense the answer says that defendant has a certificate of public convenience and necessity from the Florida Railroad commission, authorizing it to perform the service contemplated by said contract.

On final hearing the chancellor held the contract to be valid and binding on the parties thereto, that the Dade County Port Authority had power to make such a contract and enjoined the appellant from soliciting passengers for hire within the property known and described as Miami International Airport. This appeal is from the final decree.

The essential question for determination turns on the validity of the contract drawn in question. The answer to this question turns on whether or not Chapter 22963, Acts of 1945, authorizes the Dade County Port Authority to make such a contract.

Appellant contends that the contract is invalid because it

grants to Red Top Cab and Baggage Company an exclusive monopoly to transport passengers coming into Miami International Airport, that Chapter 22963 contemplates no such authority and that the effect of such a grant amounts to a nullification of the certificate of public convenience and necessity granted appellant by the Florida Railroad Commission.

As to the alleged conflict between the contract and the certificate of Public Convenience and Necessity, issued appellant by the Florida Railroad Commission, it is sufficient to say that the injunctive order does nothing more than restrain appellant from soliciting passengers for hire and loading them within the premises of Miami International Airport. The certificate of Public Convenience and Necessity shows on its face that it grants appellant a permit to operate a line of busses over the public highway until it reaches 36th Street and thence "turning left on 36th Street proceeding directly to International 36th Street Airport and returning over the same route." The Dade County Port Authority concedes the right of appellant and others to take on passengers at the 36th Street entrance but it denies them the right to solicit passengers within the Airport grounds. The certificate of Public Convenience and Necessity does not purport to authorize appellant to enter the premises of the Miami International Airport so it in no way conflicts with appellees' contract.

So much for the certificate of Public Convenience and Necessity. We come next to the question of the validity of the contract, and have reached the conclusion that it was authorized and that the chancellor must be affirmed on this point. We have examined Capitol City Light and Fuel Co. v. City of Tallahassee, 42 Fla. 462, 28 So. 810; State ex rel. Landis v. Rosenthal, 109 Fla. 363, 148 So. 796; State v. Turner, 143 Fla. 242, 196 So. 816, and other cases relied on by appellant, but we do not think they rule the case at bar. These cases treat the use of city streets, the granting of licenses and the conduct of other functions by the municipality impressed with same phase of a governmental aspect. In such cases, the law is well settled that the granting power must avoid monopolies that hamper it in its governmental capacity as well as contracts that tend to create such monopolies.

In the case at bar we are confronted with a function vested in the Dade County Port Authority that is essentially proprietory and in no respect governmental. This court knows that the international Miami Airport is one of the largest airports in the world and that passengers in large numbers enter it daily from the four corners of the earth. It also knows that airports generally, because of their modernity, the area required to install them and other reasons, are remote from the City, that transporting passengers from them to the city and looking after their comfort, safety and convenience before they are delivered to final destination is the responsibility of the Dade County Port Authority. These and other services must be provided twenty-four hours in the day and it would be hazardous to hold that the Dade County Port Authority did not have the power to make contracts to insure the performance of these services.

When given authority to do so a governmental entity is expected to perform a proprietory function under like rules and regulations as those pursued by private individuals. No one would contend that a private or a public service corporation would be barred from entering into an exclusive contract like that involved here if the necessities of its business required. When county commissioners are clothed with a proprietory function wherein they are responsible to the public for prompt and efficient service, it necessarily follows that they must be clothed with power to enable them to meet such requirements and we think the act in question does this.

In our judgment the power to acquire and operate a proprietory function implies all necessary power to operate it efficiently, but Chapter 22963 does not rest on vesting mere blanket authority to do this. In the definition of "project" with which it clothes the Dade County Port Authority is included that of "loading and unloading and handling of passengers, mail, express and freight." With reference to assets required, the act provides for the purchase of "all title and other property rights, easements, and franchises relating to any such project and deemed necessary or convenient for the acquisition, construction, purchase or operation thereof." Other provisions of the act in terms authorize the Miami Port

Authority to make contracts or agreements with common carriers and others for the purpose of performing the duties vested in it.

When a governmental entity is authorized to exercise a power purely proprietory, the law leans to the theory that it has full power to perform it in the same efficient manner as a private person would do. The terms of the conferring act here are unambiguous. In vesting such a power in the Dade County Port Authority the legislature certainly had its importance in mind and cast the act to accomplish that purpose. The operation of the Miami International Airport has been a private enterprise and the legislature knew this. We will not presume that it provided for the performance of such an important project and then clothed the Port Authority with less power than was necessary to perform it.

In Sate v. Jacksonville Terminal Co., 90 Fla. 721, 106 So. 576, this court was confronted with a question not materially different from that in the case at bar and we there approved a contract on the part of the Terminal Company granting the Jacksonville Baggage Company the exclusive right to conduct its transfer business on the premises of the Terminal Company so long as the provilege was not exercised so as to cause unjust discrimination among passengers. In State v. Wells, 96 Fla. 591, 118 So. 731, we approved another contract on the part of the Terminal Company granting the Western Union Telegraph Company exclusive right to solicit and handle telegraph messages on the terminal property.

These contracts were upheld on the theory that the service was accessorial in nature, a service which the Common Carrier is not required by law to perform, that such contracts were not void as contrary to public policy and being so, the grantor of the right was not required to acknowledge claims of rival transfer companies for part of the business or an equal privilege to solicit the business. A similar rule was approved in Black and White Transfer Co. v. Brown & Yellow Taxi Cab & Transfer Co. 276 U.S. 518, 72 L. Ed. 681, 48 Sup. Ct. 404; Red Top Taxi Cab Co. v. Terminal Railroad Association of St. Louis, 322 Mo. 463, 15 S.W. (2nd) 758; Oregon Short Line

Railroad Co. v. Davidson, 94 Pac. 10 and Fluker v. Georgia Railroad and Banking Co., 81 Ga. 461, 8 S.E. 529.

The right of Common Carriers and Terminal Companies to grant exclusive contracts to solicit patronage at railroad stations has been generally approved throughout the country. See American Law Reports, vol. 15, page 356, where many cases are cited supporting this rule. The fact that the airport involved in this litigation was owned and operated by the Dade County Port Authority would make no difference in the rule.

It follows that the judgment appealed from was correct and is affirmed.

Affirmed.

THOMAS, C. J., CHAPMAN and SEBRING, JJ., concur.