**SEABOARD AIR LINE RAILROAD COMPANY, Appellant,**

**v.**

**COUNTY OF CRISP OF THE STATE OF GEORGIA et al., Appellees.**

**No. 18171.**

United States Court of Appeals Fifth Circuit.

July 12, 1960.

Rehearing Denied Sept. 1, 1960.

J. C. McDonald, Fitzgerald, Ga., for appellant.

H. H. Perry, Jr., Albany, Ga., Graydon D. Reddick, Cordele, Ga., Perry, Walters & Langstaff, Albany, Ga., Wright & Reddick, Cordele, Ga., for appellees.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

Crisp County, Georgia, herein called the County, was empowered by an amendment to the Constitution of Georgia[1] to build a dam across the Flint River, and to erect and operate a hydro-electric generating plant at a site upon the river specified in the constitutional provision. A Crisp County Power Commission was created, a bond issue was authorized, and the Commission was empowered by the constitutional provisions to acquire rights of way for transmission lines and for the purpose of building, maintaining and operating dams, ponds, plants and machinery. The Power Commission was "authorized and empowered to employ such agents, servants, and employees, and to make and enter into such contracts as are reasonable and proper in the exercise of the duties and powers herein conferred upon said Commission."

The Flint River, at the site where the dam and generating plant were built, is a navigable stream. The County was required under the Federal Power Act to procure a license. See 16 U.S.C.A. § 791a et seq. The statute, among other things, provides:

> "Each licensee hereunder shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works or of the works appurtenant or accessory thereto, constructed under the license, and in no event shall the United States be liable therefor." 16 U.S.C.A. § 803(c).

The dam and hydro-electric plant was built during or before 1930. Since the completion of the dam and power plant, the County has been generating and marketing electric power.

The appellant, Seaboard Air Line Railroad Company, and its predecessors, operated a line of railroad in interstate commerce between Savannah, Georgia, and Montgomery, Alabama. This line of rail had been in operation for many years before the County's dam was built. The Seaboard's tracks crossed the Flint River about eight miles upstream from the site of the dam, by a fill or embankment and a trestle or bridge. The building of the dam and the consequent raising of the water level damaged the embankment of the Seaboard over which its tracks were laid. In 1939 a written agreement was made between the Receivers of the Seaboard's then predecessor and the County. In the preamble to this contract it was recited that "the pool of water impounded by the said dam extends to and beyond the said line of railroad crossing Flint River and has submerged a portion of the embankment constituting part of said railroad line, and the submergence of the said railroad embankment by the aforesaid pool of water has occasioned injury to the said embankment; and the parties hereto have agreed on the terms and conditions pursuant to which said injury shall be repaired and future injury protected against." Included in the agreement, and stating the terms and conditions for protecting the Seaboard's embankment from further injury, was Section 3, which provided:

> "Should the normal high water level of the said pool of water be raised by the County or should any

1. Georgia Laws 1925, p. 72 et seq.

change in existing conditions require, whether due to increase in the height or other structural changes in the dam, failure of the rip-rap to be installed hereunder properly to protect the said embankment from injury, or otherwise, County will at its expense take such action as may be necessary to protect said railroad embankment from injury."

By its terms the agreement inured to the benefit of the successors of the then railroad company and its Receivers.

On January 29, 1957, the Seaboard gave notice to the County that the embankment was in a bad state of repair and had been seriously damaged by being undermined by water impounded by the dam. Seaboard made demand upon the County to protect the embankment. The County refused to repair the embankment. On June 28, 1958, the Seaboard brought suit against the County alleging that the Seaboard had made repairs to the embankment at a cost of $54,286.18 for which it prayed judgment. The Seaboard asserted that the County was liable both under the agreement and by reason of the provisions of the Federal Statute under which the Federal Power Commission granted a license to the County. In its answer the County denied some of the Seaboard's factual averments but admitted that it had refused to make repairs on the embankment. The County asserted that the Seaboard's complaint failed to state a claim upon which relief could be granted; and specifically alleged that the contract was ultra vires and unenforceable so far as the County is concerned, that the Federal Statute imposed no liability on the County and if it undertook to do so it would be unconstitutional and void, and that the cause of action of the Seaboard, if any it had, was in eminent domain for damage resulting from a taking when the dam was built, but that any such claim had long since been barred by limitations.

The district court held with the County. It was of the opinion that the Federal Power Act imposed no liability on the County for injuries inflicted upon the property of others by the County's operations. The court held that, under the Georgia Constitution and the decisions construing it, there was no authorization for the County to enter into the contract with the Seaboard, and that the County was prohibited from assuming the obligations which it had undertaken by its contract to discharge. The complaint was dismissed, judgment was entered for the County, and the Seaboard has appealed. We think the district court has misconceived the meaning and purpose of the provision of the Federal Power Act which provided for liability of licensees for damage to property of others, although its conclusion that the liability imposed relates only to legal liabilities already existing has support in two state court decisions. Rice Hope Plantation v. South Carolina Public Service Authority, 216 S.C. 500, 59 S.E.2d 132; Alabama Power Co. v. Smith, 229 Ala. 105, 155 So. 601. If the County had not obtained a license from the Federal Power Commission it would have had no right to build the dam and construct the generating plant. Federal Power Commission v. Oregon, 349 U.S. 435, 75 S.Ct. 832, 99 L.Ed. 1215; First Iowa Hydro-Electric Cooperative v. Federal Power Commission, 328 U.S. 152, 66 S.Ct. 906, 90 L.Ed. 1143, rehearing denied 328 U.S. 879, 66 S.Ct. 1336, 90 L.Ed. 1647; Georgia Power Co. v. Federal Power Commission, 5th Cir., 1946, 152 F.2d 908. The license is conditioned upon the acceptance of the terms of the Act. 16 U.S.C.A. § 799. It seems to us unlikely that the Congress intended by the language it used to do no more than to disclaim liability on the part of the United States for the acts of the licensee. When the Federal Power Act was passed in 1920, sovereign immunity from suit would have protected the United States from any liability. Cf. Philadelphia Co. v. Stimson, 223 U.S. 605, 32 S.Ct. 340, 56 L.Ed. 570. The waiver of the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671–2680, did not become effective until many years later. The control of the United States over navigable streams empowers Con-

gress to condition the licenses in any manner it deems proper. No impropriety can be inferred from a requirement that a licensee protect the property of others. That this requirement was imposed by the Act as a condition of a license has been recognized by the Supreme Court. Henry Ford & Son, Inc. v. Little Falls Fibre Co., 280 U.S. 369, 50 S.Ct. 140, 74 L.Ed. 483. See also Grand River Dam Authority v. Federal Power Commission, 10 Cir., 1957, 246 F.2d 453; United States v. Central Stockholders Corp., 9 Cir., 1931, 52 F.2d 322; Levin v. Philadelphia Electric Power Co., D.C. E.D.Pa.1929, 34 F.2d 224. In the year 1939, the same year that the County made its contract with the Seaboard to protect the embankment from injury, the Supreme Court of Washington held that, under the provision of the Federal Power Act, a licensee which erected a dam was liable to a railroad for damages to an embankment. Great Northern Railway Co. v. Washington Electric Co., 197 Wash. 627, 86 P.2d 208. We are unable to reach any different conclusion.

The district court decided that the provision of the Federal Power Act, 16 U.S.C.A. § 803(c), imposing liability upon licensees for damage to the property of others means merely that if legal liability exists it shall be the liability of the licensee and not that of the Federal Government. The district court concluded that under the precedent of Bibb County v. Green, 42 Ga.App. 552, 156 S.E. 745, the Seaboard was barred from recovery by limitations upon the expiration of twelve months from the completion of the dam. In the Bibb County case it was said that the right to compensation for injury to private property inflicted by a county exists, under the Georgia Constitution, only where the enjoyment of a right of the property owner is interfered with and the property is thereby rendered less valuable. The doctrine of sovereign immunity was construed as prohibiting suits against counties for continuing or recurring injuries resulting from the constructing of a public improvement.

It is not asserted that the right of the Seaboard to own and use the embankment for the carrying of its rail over which its trains operate was not a right which was recognized by the laws of Georgia. It is, though, contended, and the district court so held, that the right is one which could be protected, if at all, by eminent domain. It is not apparent whether the extent of the future damage could have been estimated at the time the dam was built. Indeed, it may be doubted that it was contemplated by either the Seaboard or the County that the raising of the water level by the dam would cause damage to the dam. Eight years or more elapsed after the dam was completed before the contract was made for the repair of the embankment. In that agreement it was recognized that the damage might recur. Also in the agreement was the recognition of the liability of the County for the protection of the embankment from future injury. It seems doubtful, under the circumstances existing when the dam was built and for two years thereafter, that the power of eminent domain could have been invoked by the County for the acquisition of the right to undermine the Seaboard's embankment in the future and at recurring intervals. Cf. Henry Ford & Son v. Little Falls Fibre Co., supra.

The County did not attempt to acquire by eminent domain the right to inflict damage upon the embankment and to continue inflicting damage from time to time. Neither did the Seaboard seek any remedy having its origin in a taking of or damage to property such as might have been made the basis for a condemnation award. But whether or not the right of eminent domain might have been invoked, it does not follow that the County can, for that reason, evade the liability that the statute imposes for the damage to the Railroad's embankment. If it had been intended that this liability could be asserted only by a proceeding in eminent domain the statutory provisions would have been cast in different form. It is apparent, we think, that in providing for liability of a licensee for all damages oc-

casioned by the maintenance or operation of the project works, as well as by construction, Congress contemplated damage inflicted after as well as at the time of the construction. The Seaboard's right was not restricted to an award in eminent domain.

Where a governmental entity is authorized to exercise non-governmental powers and engages in an activity of a business nature such as is generally engaged in by individuals or private corporations, it acts as a corporation and not in any sovereign capacity. In such instances the law leans to the theory that the governmental entity has the full power to function in such capacity as a private person might do. 37 Am.Jur. 748, Municipal Corporations § 132; Miami Beach Airline Service v. Crandon, 159 Fla. 504, 32 So.2d 153, 172 A.L.R. 1425.

As was stressed in the opinion of the district court, it is the general rule in Georgia that counties can exercise no powers except those granted to them by the State, and can be held liable upon their contracts only when the State has authorized the incurring of the liability which is asserted against them. Crisp County, like other Georgia Counties, is a body corporate under the Georgia law. Ga.Code § 23–1501. It is expressly authorized by a constitutional grant of power to build and maintain a dam and to construct and operate a hydro-electric generating plant. It has built the dam and has constructed the plant. It is now maintaining and operating them. Incident to these specific non-governmental powers, the constitutional amendment gave, in broad and comprehensive terms, the power to contract. The general limitations upon the contractual powers of counties as contained in the general provisions of the State Constitution must yield to the specific Crisp County amendment to such extent as may be required in order to give full effect to the grant of power to make and enter into such contracts as are reasonable and proper in exercise of the duties and powers conferred upon the County. See Stewart v. Bacon County, 148 Ga. 105, 95 S.E. 983.

The statute imposed a liability upon the County for damage to the Seaboard's embankment. In recognition of that liability the County made the 1939 agreement for the repairing then of the embankment, which was done, and for the future protection of the embankment, which it refuses to do. The operation of the hydro-electric plant is a business operation. It is separate from the normal governmental functions of the County. The power of the County to make contracts, implied by law as well as conferred by the constitutional amendment, is full authorization for the contract made in the assumption of the duty as imposed by the federal statute. See Crisp County v. S. J. Groves & Sons Co., 5 Cir., 1934, 73 F.2d 327, 96 A.L.R. 391. The order of the district court must be reversed and the cause remanded for further proceedings.

In the event a judgment is ultimately rendered for the Seaboard, it seems that it should not be discharged out of the general tax revenues of the County. Polk County v. Lincoln National Life Insurance Co., 5 Cir., 1959, 262 F.2d 486. However, the revenues of the hydro-electric plant can be made available for such purpose. Cf. Crisp County v. S. J. Groves & Sons Co., supra.

Our holding here does not in any way conflict with the decision in Seaboard Air Line Railroad Co. v. Sarasota-Fruitville Drainage District, 5 Cir., 1958, 251 F.2d 583, reversed on rehearing, 255 F.2d 622, certiorari denied 358 U.S. 836, 79 S.Ct. 60, 3 L.Ed.2d 73; Seaboard Air Line Railroad Co. v. Sarasota-Fruitville Drainage District, 5 Cir., 1958, 255 F.2d 626. In that case the statute creating the drainage district prohibited the district from expending its tax revenues except for improvement and maintenance of the drainage district. Since the district had no other source of funds, it could not be compelled to respond in damages for tort, nor could it make a valid agreement to indemnify against tort liability. Here the County was under a duty imposed by the

Federal Power Act to protect the Seaboard's property, and thus the Act created a tort liability.

The order of the district court is reversed and the cause is remanded.

Reversed and remanded.