### NORMAN v. DADE COUNTY, et al.
No. 61 C 4447.

Circuit Court, Dade County.

July 31, 1961.

John E. Kirk, Miami, for plaintiff.

Darrey A. Davis, County Attorney, for Dade County.

S. R. Sterbenz, Ass't. City Attorney, for City of Miami.

PHILLIP GOLDMAN, Circuit Judge.

The plaintiff, Richard E. Norman, d/b/a Bonded Garage, operates a "valet parking service" on what is now Dade County seaport property. By this action he seeks (as measured by his prayers for relief) to enjoin the county from operating a parking lot or valet parking service in competition with him. In addition the court is requested to determine and assess his damages and to order a refund of monies allegedly illegally extracted from him by the county and its predecessor in interest, the City of Miami.

The gravamen of plaintiff's action, as the court understands it, is: 1) that the plaintiff acquired some sort of vested status (the precise legal quality of this position is not made clear) by virtue of having pioneered the operation in question; 2) that Dade County has no legal or lawful authority to either enter into the private business of "valet parking", or to open and operate a parking lot in direct competition with the plaintiff; and 3) that neither Dade County nor its predecessor, the City of Miami, may lawfully require the plaintiff to pay for his use of the seaport facilities.[1]

The principal thrust of the defendants' defense is that the plaintiff has no right to use the property in question for commercial purposes without an agreement from them; that plaintiff, in apparent recognition of this fact, entered into and operated under such an agreement (Def. Ex. "C") over an extended period of time (first with the city and then with the county) and that the only moneys "extracted" from plaintiff were pursuant to this agreement.

The agreement in question is before the court. It appears to grant a *non-exclusive* franchise or concession to the plaintiff to conduct a business of parking cars for cruise passengers using the seaport property, in consideration of the payment to the city (later the county) of 50 cents per automobile. The agreement is revocable on 30 days notice by either party. In addition it is specifically described as an *"interim agreement"* "pending a survey . . . to determine the best procedure to follow in operating this particular type of service . . . " (Italics added.)

In an apparent effort to overcome the express language of the agreement, plaintiff testified that there was a verbal understand-

---

[1]This contention does not appear to be within the scope of plaintiff's pleadings. Nevertheless the court has considered it.

ing between himself and the defendant Darlow (on behalf of first the city and then the county) to treat the agreement as an *exclusive* franchise. Darlow denied this. In addition, as plaintiff's counsel with commendable candor admits, the city could not grant such an exclusive franchise. It is also of considerable significance that in the preliminary negotiations (Def. Ex. "A", ltr. Norman to Darlow dtd 3/17/60) the plaintiff *affirmatively sought* an exclusive franchise, which seemingly was denied. In any event the agreement in question is clear and unambiguous (at least on this point) and the court does not feel warranted in going behind it.[2]

Turning now to plaintiff's right to use the property in question, the court is inclined to agree with the county's position that the plaintiff's only authority to operate its business on public property is the concession agreement, and its operation must adhere to that agreement. See Miami Beach Airline Service v. Crandon, Fla., 32 So.2d 153, North American Co. v. Bird, Fla., 61 So.2d 198, Gate City Garage, Inc. v. City of Jacksonville, Fla., 66 So.2d 653, at 659. See also, Charter of the City of Miami, section 3 (m), chapter 10847, Laws of Florida, Special Acts of 1925, as amended, and section 1.01 A(1), (2) and (4) of the Home Rule Charter of Metropolitan Dade County, which appear to be more than adequate authority for the county to provide and regulate parking facilities and port facilities of the types under consideration.

It is not necessary to explore the outer orbit of the county's (or city's) power to exclude a business (in the absence of a franchise) which involves the *mere* delivery of passengers and cars where there have been advance reservations. This is so because that is not the operation here. The testimony of plaintiff's own witness, his employee Mr. William Abram, reveals that the operation in question goes considerably beyond the *mere* parking and discharge of passengers and vehicles.

Turning next to plaintiff's contention that the concession agreement is invalid because the defendant city did not formally approve the contract, the court finds this position lacking in merit.

The evidence reveals that the defendant Darlow executed the contract as port director of the city. He testified that he did so

---

[2]Even assuming (arguendo) that the plaintiff was entitled to the exclusive operation of a valet-parking business under the agreement, there has been no showing that anyone else was ever permitted to or did operate a similar business. The plaintiff himself testified that he was the only one to operate this type of business at the seaport *before* or *after* the agreement.

upon authority of the acting city manager after consultation with the city attorney. This in and of itself, of course, does not constitute formal approval.[3] However, it is undisputed that plaintiff has conducted a valet parking service as contemplated by the agreement continuously from April 1, 1960 to the present, and the city (and later the county) accepted moneys from the plaintiff in accordance with and at the rate specified in the contract.

Both the plaintiff, on the one hand, and the city and the county, on the other hand, have accepted and received the benefits of the agreements. It seems clear that if the "shoe was on the other foot" the city and the county would be estopped to deny the validity of the agreement. Cf., e.g., Bregar v. Britton, Fla., 75 So.2d 753, certiorari denied 348 U.S. 972, 75 S.Ct. 534 (estoppel invoked against a county), Texas Company v. Town of Miami Springs, Fla., 44 So.2d 808 (estoppel invoked against a city). Cf. also, Trustees of Internal Improvement Fund v. Claughton, Fla., 86 So.2d 775 (estoppel invoked against a state agency). The converse of this principle of necessity is equally true. See generally, 10 McQuillin, Municipal Corporations (3d Ed.) §29.103. Where as here the plaintiff performed and benefited from the agreement, he, too, is estopped to deny its validity.

Plaintiff also makes some assertions as to "unfair competition". Although the evidence adduced by the defendants refutes these claims and the court so finds, the evidence does reflect a "hint of harrassment". While, the "hint" is not sufficiently clear or convincing to warrant invoking this court's injunctive machinery against a public body, it is worthy of a warning that if it does exist, it should be stopped.

If the county is unhappy with the agreement (or the plaintiff-concessionaire's conduct under the agreement) it should seek to invoke such lawful remedies as it may have, without taking the law in its own hands.

It is accordingly, ordered and decreed that this cause be and it is hereby dismissed with prejudice; each party to bear their respective costs.

---

[3] Darlow testified that he did not recall whether or not there had been formal approval.