McCORD, Judge.
This is an appeal from a final declaratory judgment construing a Pensacola airport car rental concession contract between appellant National Car Rental System, Inc., hereafter called National and appellee, the City of Pensacola, hereafter called City. Appellee Dollar Rent-A-Car Systems, hereafter called Dollar, was an intervenor. The trial court ruled that the City’s contract with National did not prevent it from entering into an additional car rental concession with Dollar. We disagree and reverse.
On May 30, 1973, the City advertised its intention to receive proposals on rental car concessions at its airport. The advertisement stated that an award of the concession would be made to the highest of as many as three responsible bidders. The proposed concession stated that the advertisement, the instructions, the general specifications, the special specifications, the information concerning bidder, the proposal form and the contract form would all become a part of the proposal and be incorporated into the contract. A similar provision is contained in the proposal and in the contract itself. The contract is for a period of five years.
National was one of three successful bidders for such a concession, and all three concessionaires were actively operating at the airport on July 23, 1975, when the City Council approved a motion that would allow Dollar to also operate a rental car concession at the airport. Such resulted in this lawsuit. It was contended in the trial court that there is no prohibition in the contract between National and the City that would prevent Dollar from also obtaining a concession and the trial court so found in its final judgment.
The contract documents state in two places that the automobile rental concession would be granted to “as many as” three bidders, and the term of the contract was stated to be for five years. The amount to be paid to the City by National was based upon a percentage of gross sales with a minimum guarantee. The contract documents clearly indicate that no more than three rental car concessions would be awarded during the five year term of the contract. Since advertisements for bids were submitted on that basis, it would certainly follow that bidders would take into consideration the fact that they would have no more than two competitors at the airport, and such would enter into their determination of how much they would agree to pay for the next five years as an annual minimum payment.
While appellee calls attention to the fact that paragraph 24 of the proposed concession (a part of the contract papers) provides:
“NON-EXCLUSIVE LEASE: Notwithstanding anything herein contained that may be or appear to be to the contrary, it is expressly understood and agreed that the rights granted to City in this agreement in that such rights relate to any landing area or navigation facility, within the meaning or contemplation of such terms and rights as referred to in Section 303 of the Civil Aeronautics Act (C. 601, Title 111[III], Sec. 303, [52] Stat. 986; 49 U.S.C.A. Sec. 453), or any subsequent act or regulation of the Federal Government, are non-exclusive, and the City herein reserves the right to grant similar privileges to another operator or other operators.”
the above paragraph obviously pertains only to a landing area or navigational facility within the meaning of § 303 of the Civil Aeronautics Act. That section of the Act which has since been repealed provided:
*1030 “There shall be no exclusive right for the use of any landing area or air navigation facility upon which Federal funds have been expended.”
There is nothing in the record before us to show that this restriction has any application to the operation of a rental car concession at the Pensacola airport, and appellees have not argued that it does. Referring to paragraph 24, appellees in their brief state:
“However, even though we do not interpret the aforementioned paragraph to apply to rental car agencies, .there still remains the fact that nothing contained in the contract prohibits the City during the life of the contract from granting other contracts to other agencies.”
Appellees go on to argue that since the specifications refer to paragraph 24, such “must serve some useful purpose and the inclusion therein indicated clearly to the bidders that the contract to be entered into between them was not to be exclusive.”
We do not consider there was any such implication unless, as the provision says, the rights are prohibited from being exclusive under Section 303 of the Civil Aeronautics Act (which was repealed by P.L. 85-726, Title XIV, § 1401(b), 72 Stat. 806, and is now covered by 49 U.S.C.A. § 1349, in substantially the same form as is pertinent here). We agree with the well-reasoned opinion of the United States District Court, Northern District of Texas, Dallas Division, in Continental Bus System, Inc. v. City of Dallas, 386 F.Supp. 359 (N.D.Tex.1974), in construing 49 U.S.C. § 1349. There the court said in relation to the operation of the Dallas-Ft. Worth airport:
“One of Continental’s themes in this suit is that the cities have granted an ‘exclusive franchise’ to Surtran. This franchise creates a monopoly prohibited by 49 U.S.C. § 1349(a), Continental insists. The text of the statute is quoted in the margin, but in essence it provides that if any federal funds have been spent on the construction of ‘any landing area or air navigation facility,’ then no one shall have an exclusive right to its use. Continental points out that federal funds were used at D/FW Regional and concludes that the law prohibits Surtran’s exclusive right to operate there. I cannot agree that this is the law.
Continental apparently equates sidewalks and curbs, at which buses load passengers, with ‘landing areas’ and ‘air navigation facilities.’ The statutory definitions of these terms do not agree with Continental’s position. ‘Landing area’ is defined in 49 U.S.C. § 1301(22) as a locality, including airports, which is used or intended to be used for the landing and take-off of aircraft. An ‘air navigation facility,’ according to 49 U.S.C. § 1301(8), is a device used to aid navigation of aircraft, such as lights and radios. Thus, even if the cities had granted Surtran an exclusive franchise — as contrasted with operating it themselves — Surtran’s operations would not be within the statute in question, just as hangar leasing was held not to be within the statute in MacAire Aviation Corp. v. Corporate Air, Inc., 6 Conn.Cir. 238, 270 A.2d 849 (1970). It seems fairly obvious that the congressional purpose of this statute was to prohibit an owner or operator of an airport built partly with federal funds from allowing, say, one airline to do business there while forbidding another airline to land there. It does not forbid the cities of Dallas and Fort Worth from operating their own bus service at the airport to the exclusion of a privately owned bus company.”
In addition, we note that the Supreme Court in Miami Beach Airline Service v. Crandon, 159 Fla. 504, 32 So.2d 153, 172 A.L.R. 1425 (1947), upheld the authority of the Dade County Port Authority to grant a taxicab company an exclusive right to transport commercial airlines passengers between such authority’s airport and the city. That case, however, did not involve a construction of the foregoing Federal Act.
Reversed and remanded for further proceedings consistent herewith.
BOYER, C. J., and MILLS, J., concur.